UNITED STATES, Appellee

v.

JOSEPH D. WERTHMAN, Staff Sergeant, U. S. Air Force, Appellant

5 USCMA 440, 18 CMR 64

No. 5485

Decided January 21, 1955

Col A. W. Tolen, USAF, Maj John J. Ensley, USAF, Capt Thomas V. Monahan, USAF, and Capt Donald C. Helling, USAF, for Appellant.

Lt Col Emanuel Lewis, USAF, and Lt Col Harold Anderson, USAF, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

This case involves a relatively simple proposition of law which arises out of a transaction collateral to the guilt or innocence of the accused. For orientation purposes, a short statement of facts is considered desirable. Contrary to the usual rule, we will present the evi-

**441**

dence in a light most favorable to the accused.

## I

On April 21, 1953, the accused secured a fifty-five gallon drum of wood preservative from the Air Force Base and sold it to a civilian contractor. It was stipulated at the trial that the value of the property converted was more than $20.00 but less than $50.00. The theft was discovered and an investigation was instigated by the Office of Special Investigations. The accused was suspected and interrogated. He first denied any complicity in the crime, but subsequently, on May 8, 1953, he made a complete confession. When his extrajudicial statement is considered with other evidence appearing in the record, any reasonable doubt about his guilt is nonexistent.

During the course of the investigation and when it was nearing completion, the accused was called into a conference with his squadron commander and an investigator from the Office of Special Investigations. During the discussion the squadron commander informed the accused that so far as he, the commander, was concerned charges would not be preferred, and that he would seek an approval of his action from the wing commander. It was stipulated between the parties that if the squadron commander were present as a witness he would testify that the wing commander had concurred in his decision not to prosecute.

Sometime during the month of September 1953, a new commander was detailed to command the squadron. Shortly after assuming his duties he was shown a letter from the Far East Air Force, Office of Special Investigations, to the local office in his district, inquiring as to why charges had not been filed against the accused. When he became thoroughly acquainted with the facts and circumstances uncovered during the investigation, he preferred charges and the accused was ordered to be tried by a special court-martial. Trial was set for November 13, 1953, but it could not be held on that date for the reason that on the day prior thereto the accused went absent without authority

and remained in that status until March 8, 1954.

Upon accused's return to military control, he was charged with two offenses, namely, larceny of the wood preservative, in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715, and absence without authority with intent to remain away permanently contrary to Article 85, Uniform Code of Military Justice, 50 USC § 679. The charges were referred for trial to a general court-martial; but at the time of arraignment, the accused moved to dismiss the larceny charge on the grounds that to permit him to be prosecuted for that offense would constitute a violation of military due process. His motion was denied, he was found guilty on both charges, and he was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for one year. A board of review in the office of The Judge Advocate General of the Air Force affirmed the findings and sentence, and we granted the accused's petition for grant of review to determine the legal effect of the alleged agreements of the squadron and wing commanders.

## II

The Manual for Courts-Martial, United States, 1951, paragraph 67a, enumerates certain defenses and objections which may be asserted in bar at trial. In that paragraph we find the following statement:

"Defenses and objections such as that trial is barred by the statute of limitations, former jeopardy, pardon, constructive condonation of desertion, former punishment, promised immunity, lack of jurisdiction, and failure of the charges to allege an offense should ordinarily be asserted by motion to dismiss before a plea is entered; but failure to assert them at that time does not constitute a waiver of the defense or objection."

There may be other allied defenses and objections not enumerated in the foregoing quotation which might be raised by an accused person, but if so, they are not brought into focus as

an issue in this case. Of those which are mentioned above, we offhand select the following as not being worthy of any consideration: the statute of limitations; promised immunity; lack of jurisdiction; and failure of the charges to allege an offense. That leaves for consideration—and doubtful at the best —only former punishment; pardon, actual and constructive; and former jeopardy. We will hereinafter discuss those in the order stated.

### III

While a commander may dismiss pending charges or refuse to prefer them, it is impossible to in-■ terpret his promise not to prefer or to dismiss as any form of punishment. Paragraph 32d of the Manual provides as follows:

"*Dismissal of charges.*—He [the commander] may decide, as a result of the preliminary inquiry, that all or some of the charges do not warrant further action because they are trivial, do not state offenses, are unsupported by available evidence, or because there are other sound reasons for not punishing the accused with respect to the acts alleged. Likewise, as to suspected offenses for which charges have not been preferred, he may determine that charges should not be preferred. If so, he need not prefer charges. Unless competent superior authority has directed otherwise, he may dismiss all or part of any charges that have been preferred. With respect to offenses for which charges have been preferred, specifications and charges thus disposed of will be lined out and initialed. If all offenses charged are dismissed, he may notify the accuser of the action taken and the reasons therefor."

The record does not set forth the reasons why the squadron commander elected not to prefer charges against the accused, but we are willing to assume, arguendo, that he had sound reasons for his conclusion. However, that makes little difference to our ultimate decision as, regardless of the presence or absence of good faith, the accused

failed to establish that he was punished by even as much as a reprimand.

In dealing with former punishment, paragraph 68g of the Manual provides as follows:

"*Former punishment.*—Non-judicial punishment previously imposed under Article 15 for a minor offense may be interposed in bar of trial for the same offense. For a definition of 'minor offense,' see 128b. Such punishment, however, does not bar trial for another crime or offense growing out of the same act or omission. For instance, punishment under Article 15 for the careless discharge of a firearm would not bar trial for involuntary manslaughter if the careless act caused a death. See Article 15e."

We need not concern ourselves with any rights or privileges conferred by either or both of the foregoing paragraphs for the reason that the squadron commander did not proceed to punish under any punitive provision of the Uniform Code of Military Justice or under any of his administrative powers. He concluded that neither judicial nor nonjudicial punishment was necessary and, therefore, a discussion of the effect of company punishment is purely academic. Certainly, when no action has been taken to place an alleged offense in either judicial or administrative channels for punitive purposes, and when the record shows no more than a promise not to proceed, the contention that a subsequent trial should be barred because of former punishment cannot be sustained.

### IV

The Manual provides that a pardon is an act of the President which exempts the individual upon whom ■ it is bestowed from the punishment the law inflicts for a crime he has committed. Obviously the accused cannot support his motion for dismissal on the grounds of a Presidential forgiveness. However, for the purposes of this case, we concede that there is a legal theory of constructive pardon or condonation which might be brought into existence by someone with less power than the Chief Execu-

tive. Such a theory likewise cannot support the motion made by the accused. Condonation is an act of grace which cannot be extended by one who does not have authority to convene a general court-martial, and then only to deserters. Moreover, Winthrop on page 271 of his Military Law and Precedents, Second Edition, 1920 Reprint, states the early rule of law, which is unmodified by later decisions, to be: "Nor can the mere fact that charges once preferred have been dropped by a commander be pleaded in bar as a constructive pardon of the same, upon their being subsequently revived and brought to trial in connection with charges for offences since committed." Here the accused is on less firm ground as the cause did not proceed to the point where charges had been preferred and so there was, in fact, no dismissal to plead in bar.

If, as the Manual for Courts-Martial, United States, 1951, in paragraph 56c states, a withdrawal of a specification is not a bar to a subsequent prosecution for the same offense, a failure to set up a specification could hardly be considered as a legal block. This view is well expressed on page 47 of the Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, where it states:

> "*Dismissal of charges.* As the immediate commander may prefer or fail to prefer charges, it follows that if someone else has preferred charges, the immediate commander should have the authority to dismiss them. Although this rule always existed in the Army and Air Force, it was not specifically stated in the 1949 Manual. As the dismissal of charges prior to trial does not bar trial (Art 44), a superior commander may prefer, or have preferred, charges alleging the same or different offenses than those dismissed by the immediate commander. Likewise, a superior commander may limit the authority of the immediate commander with respect to dismissal of the charges."

## V

The doctrine of former jeopardy is inapplicable as a foundation to sustain the accused's motion. Article 44 of the Uniform Code of Military Justice, 50 USC § 619, sets out the military law in that field and it indicates that that defense may be sustained only where there has been a termination of proceedings by a judicial act of some recognized form or a trial of the accused on the merits. The language of that Article is amplified by paragraph 68d of the Manual, and the tenor of that paragraph shows that the framers of the Manual interpreted the Code to mean that a judicial proceeding must be involved before the plea can be considered in bar of trial. A promise not to prosecute has never been interpreted to have the effect of a judicial order or decree, and here the act of the squadron commander was no more than a personal preference not to proceed against the accused if the wing commander did not object. That sort of an arrangement is not the equivalent of jeopardy.

## VI

Counsel for the accused assert vigorously that military due process encompasses good faith on the part of commanders. They refer us to documentations on military leadership and contend that they required the law officer to dismiss the charges. While many ethical grounds may be advanced as to why promises not to prosecute should not be broken, unless the promisor has the authority to make an agreement which is binding on the prosecution, it cannot be barred from requiring an offender to pay the penalty for a crime committed. In this instance, the squadron commander had no authority to commit the Government to one course of action and there are suggestions in the record which indicate that the accused was merely the beneficiary of a friendly gesture from a compassionate commander. Furthermore, the commander who gave his word did not break his agreement, and his statement can hardly be expanded to include a promise that his successor or his superiors other than the wing commander would be expected to follow the same course.

## VII

Lastly, accused asserts he was not given a speedy trial. This requires but little discussion. The stat-■■■■■ ute of limitations does not bar prosecution for this type of offense under Article 15, 50 USC § 571, or by a court-martial, until two years after its commission. The investigation was conducted promptly. During the initial period the delay was welcomed and the accused was more than willing that charges be not preferred. The total elapsed time the proceedings remained in that status was approximately four months and the ac-cused was unable to assert honestly that his defense on the merits was impaired by that postponement. Any delay thereafter was chargeable solely to his unknown whereabouts. He was afforded an opportunity to establish grounds for a continuance, but he produced none of substance. Giving him the benefit of all circumstances, he has failed to make any showing which would permit us to hold he was denied due process of law.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.