UNITED STATES, Appellee

v

RICHARD P. ELLSEY, Private, U. S. Marine Corps, Appellant

16 USCMA 455, 37 CMR 75

No. 19,572

December 23, 1966

*Lieutenant Commander George E. Goodwin,* USN, argued the cause for Appellant, Accused.

*Lieutenant Colonel Frederick H. Campbell,* USMC, argued the cause for Appellee, United States. With him on the brief was *Colonel J. E. Hanthorn,* USMC.

## Opinion of the Court

FERGUSON, Judge:

Convicted below by special court-martial of a number of offenses in violation of the Uniform Code of Mili- tary Justice, the accused sought our review, and we granted his petition upon the following issues:

1. WHETHER AMENDING THE SPECI-
FICATION OF ADDITIONAL CHARGE II
WAS AUTHORIZED.

2. WHETHER THERE IS A FATAL
VARIANCE BETWEEN THE ALLEGATIONS
AND THE PROOF OF THE SPECIFICATION
OF ADDITIONAL CHARGE II.

I

The specification of Additional Charge II originally alleged the offense of escape from lawful custody. After the charges were referred to the trial counsel, he approached the convening authority and requested permission to amend the specification to allege escape from confinement. The convening authority denied such permission. Thereafter, trial counsel apparently consulted with the Office of the Staff Legal Officer. The Assistant Staff Legal Officer discussed the matter with the convening authority, who again refused permission to alter the specification. Nevertheless, the specification was amended to charge escape from confinement, and it was for this offense that accused was tried. It also appears trial defense counsel was " 'assured that the convening authority had authorized (trial counsel) to make the change.' " In fairness to trial counsel, it must be said that he was told by the Staff Legal Officer to make the change and " 'that he'd advise the convening authority accordingly.' " Apparently, the latter's final ruling to the contrary was never communicated to trial counsel.

This Court has always permitted liberal amendment of pleadings, provided the substantial rights of the accused were not prejudiced. United States v Squirrell, 2 USCMA 146, 7 CMR 22; United States v Johnson, 12 USCMA 710, 31 CMR 296; United States v Krutsinger, 15 USCMA 235, 35 CMR 207; United States v Arbic, 16 USCMA 292, 36 CMR 448. In general, we have permitted such action, if the change "does not result (1) in a different offense or in the allegation of an additional or more serious

offense, or (2) in raising a substantial question as to the statute of limitations, or (3) in misleading the accused." United States v Arbic, supra, at page 294.

Pointing to these standards, the Government urges the accused was not here misled; the two offenses are punishable to the same extent; no question of limitations is involved; and that the amendment did not result in the allegation of a different or more serious offense. Conceding the convening authority may "have been unhappy" over trial counsel's amendments, it argues he eventually ratified such actions by approving the findings and sentence of the court.[1] We nevertheless conclude the amendments were illegal and void.

At the outset, it appears the parties are agreed the convening authority twice specifically forbade any amendment of the specification. His order was judicial in nature and was binding upon trial counsel. True, the latter is authorized to "correct and initial slight errors or obvious mistakes in the charges," but he is appointed by and operates under the direction of the convening authority. As such, he "will not without authority make any substantial change" in the allegations. Manual for Courts-Martial, United States, 1951, paragraph 44f(1). These procedural regulations, promulgated by the President with regard to the amendment of charges, have the force and effect of law. United States v Smith, 13 USCMA 105, 32 CMR 105.

In United States v Nix, 15 USCMA 578, 36 CMR 76, we were confronted with a similar situation. There, the convening authority, upon application, ordered a psychiatric examination of the accused. Military medical authorities refused to comply with the order. Referring to the judicial nature of the convening authority's activities in connection with courts-martial and the pertinent provisions of the Manual, supra, relating thereto, we declared, at page 581:

---

1. Ratification is hardly a valid argument here, assuming it could ever be, for the convening authority acting on the record of trial was not the convening authority who denied the request to amend the charge.

"To the extent that the Manual relates to procedure and modes of proof in court-martial cases, it has the force of law. Uniform Code of Military Justice, Article 36, 10 USC § 836; United States v Smith, 13 USCMA 105, 32 CMR 105. Paragraph 121 of the Manual, supra, comes within the ambit of that Article. Since pretrial motions are properly addressed to the convening authority, his action in approving the defense request was a judicial order which must be complied with and completed before proceeding with the trial. Sullivan v United States, 205 F Supp 545 (SD NY) (1962)."

See also United States v Dobson, 16 USCMA 236, 36 CMR 392.

In like manner, we pointed out in United States v Smith, 16 USCMA 274, 36 CMR 430, that a convening authority's order determining a rehearing impracticable and ordering the charges against an accused dismissed was final and binding on all subsequent convening authorities. Cf. United States v Werthman, 5 USCMA 440, 18 CMR 64.

The teaching of these cases is clear. The convening authority's function in military justice is judicial in nature. His actions are magisterial, and this is so whether he grants pretrial relief to a party to the proceedings or, as in this case, denies it. Hence, his ruling refusing to permit the trial counsel to alter the specification in question was binding on that officer. United States v Nix, supra; United States v Smith, 16 USCMA 274, supra. The change of the offense thereafter to escape from confinement was, therefore, a nullity and could not operate to create a valid charge against the accused.

## II

Normally, the foregoing would suffice to dispose of the case, for both issues on which we granted review deal with the improperly constituted charge. The Government, however, urges there is no substantial difference between the offenses of escape from custody and escape from confinement and, hence, imply no prejudice resulted from the unauthorized action of the trial counsel. A study of their brief and that of appellate defense counsel indicates some confusion exists regarding the two crimes, as well as a difference of viewpoint between various service boards of review. We deem it necessary, therefore, as well as desirable to reach the second question before us and inquire whether there is presented a fatal variance between the allegation that accused escaped from lawful confinement and the proof. In order to do so, a brief sketch of the evidentiary background is obviously necessary.

The accused was taken from the battalion adjutant's office by a guard, who was there furnished with a written confinement order directing his incarceration in the brig. En route to the confinement facility, accused was accompanied to his barracks in order to pack his gear. While at the latter place, accused evaded his guard and disappeared. Based on these facts, the accused was, as noted above, charged with escape from custody and convicted, because of the alteration of the count, of escape from confinement. The question of variance before us thus turns on the difference between "custody" and "confinement."

Code, supra, Article 95, 10 USC § 895, under which the accused stands convicted, provides for the punishment of "Any person subject to this chapter who resists apprehension or breaks arrest *or who escapes from custody or confinement*." (Emphasis supplied.) It is urged that the emphasized portion of the statute creates but the single offense of escape which may be proven to be committed—regardless of the allegations—from either custody or confinement, both being mere forms of physical restraint. We cannot agree, for we believe the argument overlooks essential differences between the two statuses.

Confinement is defined by the Uniform Code of Military Justice as "the physical restraint of a person." Code,

557

supra, Article 9, 10 USC § 809. It may be imposed upon an enlisted person only by a commissioned officer, and by a warrant officer, petty officer, or noncommissioned officer only when such authority is conferred upon them by a commanding officer. It may be imposed upon a commissioned or warrant officer or civilian "only by a commanding officer to whose authority he is subject." Such authority may not be delegated. Code, supra, Article 9. It may not ordinarily be executed if an accused is charged with an offense normally tried by summary court-martial, Code, supra, Article 10, 10 USC § 810, nor may it be carried out "in immediate association with enemy prisoners or other foreign nationals." Code, supra, Article 12, 10 USC § 812. Where imposed by a court-martial, it begins to run from the date the sentence is adjudged. Code, supra, Article 57, 10 USC § 857. Confinement cannot be refused "when the committing officer furnishes a statement, signed by him, of the offense charged against the prisoner," and must be reported by the custodian, "within twenty-four hours after that commitment or as soon as he is relieved," to the commanding officer. Code, supra, Article 11, 10 USC § 811.

On the other hand, custody is defined only inferentially by the Code, which declares "Apprehension is the taking of a person into custody." Code, supra, Article 7, 10 USC § 807. The Manual, supra, elaborates upon this by declaring, in paragraph 174d:

". . . Custody is that restraint of free locomotion which is imposed by lawful apprehension. The restraint *may be corporeal and forcible or, once there has been a submission to apprehension or a forcible taking into custody, it may consist of control exercised in the presence of the prisoner by official acts or orders.*" [Emphasis supplied.]

Unlike confinement, "Any person authorized under regulations governing the armed forces" may apprehend members of the services and thus impose the status of custody upon them. So, also, may officers, warrant officers, and noncommissioned officers quell

disorders and "apprehend persons subject to this chapter who take part therein." Code, supra, Article 7. In short, as the Manual, supra, points out, "There is a clear distinction between the authority to apprehend and the authority to arrest or confine." Manual, supra, paragraph 19d. Moreover, those empowered to apprehend are only authorized "to secure the custody of an alleged offender until proper authority may be notified." Manual, supra, paragraph 19d.

Thus, it will be seen that custody and confinement are entirely different in nature. The first results from apprehension and lasts "until proper authority may be notified." Manual, supra, paragraph 19d. It may be imposed by any person empowered by departmental regulations. Confinement, on the other hand, absent authorization by a commanding officer, may be ordered only by a commissioned officer. Its execution before and after trial is subjected to strict control. Finally, while custody may of necessity be maintained by physical restraint, it also suffices to utilize no more than moral suasion. Hence, far from being identical to confinement, it is an altogether different condition.

Indeed, the legislative history evidences the intent of Congress to create two different types of restraint in dealing with custody and confinement. By the enactment of the pertinent Articles of the Code, a "certain duality of meaning in the words 'arrest,' 'restraint,' 'confinement,' and words of that character," was found and "we adopted this scheme to clarify the defintitions [sic] of those words and started off with 'apprehension' in article 7." Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 901–902.

What was intended by custody was the temporary form of restraint imposed upon an individual subject to the Code by his lawful apprehension. United States v West, 1 CMR 770. It was to continue until "proper authority may be notified." Manual, supra,

paragraph 19*d*. At that time, such authority may take cognizance of the circumstances and order the individual into confinement—"a screening-out process will occur here in reference to a more permanent status." Hearings, supra, at page 904. As was said in United States v West, supra, at page 773:

"... Such status [custody] thereafter may be altered by the arrest, confinement, restriction, or release of the individual. After confinement has been effected in a lawful manner (MCM, 1951, par 20d (3)), by competent authority (Art 9 (b)(c); MCM, 1951, par 21a) (which is 'confinement' as contemplated by Article 95 and MCM, 1951, par 174c, and is something more than mere restraint within a confinement facility), such confinement is not a continuation of custody but a new and different form of restraint. Nor does confinement include custody in this sense, because confinement may be imposed in cases where there has been no apprehension and resultant custody."

Applied to the facts before us, the fatal variance between the evidence and the "charge" upon ██ which the accused was tried becomes apparent. The accused had been duly ordered into confinement. It appears he was then taken into custody for delivery to the confinement facility. Before that delivery could be effected and confinement actually imposed upon him, the accused made his escape. Hence, his offense was breach of lawful custody of his guard and not of a confinement in which he never entered. Poetically speaking, "Stone walls do not a prison make, nor iron bars a cage;"[2] practically and legally, they do.

---

2. Lovelace, To Althea from Prison, stanza 4.

The findings of guilty of Additional Charge II and its specification are set aside. The decision of the board of review is reversed and the record of trial is returned to the Judge Advocate General of the Navy. The board may reassess the sentence on the remaining findings of guilty or order a rehearing on a proper charge and the penalty.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

Escape from custody is a violation of Article 95, Uniform Code of Military Justice, 10 USC § 895. Escape from confinement is a violation of the same Article. As differentiated in the majority opinion, custody is a sort of lesser species of confinement, in that it can be imposed by enlisted as well as commissioned personnel; it includes moral suasion as well as physical restraint; it is transient in nature, whereas confinement lasts until it is properly terminated. The two offenses occupy a position generally analogous to that which a wrongful taking bears to larceny. See United States v Thurman, 10 USCMA 377, 27 CMR 451. This view leads me to disagree with the majority.

I agree that trial counsel could not change the nature of the charge contrary to the determination of the convening authority. However, the change he effected included escape from custody, the charge which the convening authority had referred to trial. The evidence supports a finding of guilty of the amended charge, but since only escape from custody was referred to trial, findings of guilty of that offense can properly be sustained as a violation of Article 95 of the Uniform Code. United States v Thurman, supra, page 381. I would, therefore, return the record of trial to the board of review for modification of the findings of guilty.