**UNITED STATES**

v.

**Airman Basic David C. REAM, FR 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 416th Security Police Squadron Eighth Air Force (SAC).**

**ACM S24282.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 22 Aug. 1975.

Decided 16 Dec. 1975.

Appearances: Appellate counsel for the Accused: Colonel Jerry E. Conner and Major John A. Cutts III. Appellate counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Frederick P. Waite.

## DECISION

EARLY, Judge:

Tried by special court-martial, military judge alone, the accused was convicted, pursuant to his pleas, of two specifications of absence without leave, in violation of Article 86, and, contrary to his plea, of one specification of escape from custody, in violation of Article 95, all Uniform Code of Military Justice, 10 U.S.C. §§ 886, 895. The approved sentence extends to a bad conduct discharge, confinement at hard labor for two months, and forfeiture of $229.00 per month for two months.[1]

Appellate defense counsel invite our attention to several errors assigned by the accused in his request for appellate defense counsel. These assertions challenge the legal and factual sufficiency of the escape from custody offense.

The record discloses that the accused was apprehended as a military deserter by local police officers in Lancaster, Pennsylvania and that two members of the accused's squadron, Sergeants Bucher and McMickle, were sent to Lancaster Prison to escort the accused on his return to his organization. After obtaining the accused's custody from Lancaster Prison officials, Sergeant Bucher then drove the accused to his nearby home in order to collect the accused's personal belongings. Upon arrival at his home, the accused entered the house in the company of Sergeant McMickle. While McMickle waited downstairs near the entrance, the accused proceeded upstairs. McMickle heard the accused "yelling for his brother . . . to help him find some of the things that he needed." However, when he could no longer hear the accused's voice, McMickle went upstairs but could not locate the accused. The two escorts immediately searched the area but to no avail.

■ Initially, we note that an individual may be taken into custody merely for the purpose of delivering him from one place to another. *United States v. Byrd,* 45 C.M.R. 448 (A.F.C.M.R.1972). Furthermore, although the accused was not formally advised that he was under apprehension and thereby taken into custody, the facts and circumstances surrounding his release from civilian confinement and delivery to the two escorts as a military deserter were sufficient to constructively notify him as to his status of custody. *United States v. Byrd,* supra; cf. *United States v. Ellsey,* 16 U.S.C. M.A. 455, 37 C.M.R. 75 (1966). As was said in *United States v. Fleener,* 21 U.S.C.M.A. 174, 44 C.M.R. 228, 235 (1972):

> If the totality of facts reasonably indicate that both the accused and those possessing the power to apprehend are aware that the accused's personal liberty has been restrained, even in the absence of verbalization, an apprehension is complete.[2]

■ The principal issue at hand is whether the accused's custody status was terminated when he was permitted to depart from the immediate physical presence of his escort, Sergeant McMickle. We hold that it was not.

The Manual for Courts-Martial, 1969 (Rev.), defines "custody" as

> . . . that restraint of free locomotion which is imposed by lawful apprehension. The restraint may be corporeal and forcible or, once there has been a submission to apprehension or a forcible taking into custody, it may consist of control exercised in the *presence* of the prisoner by official acts or orders. (Emphasis supplied.)

Manual for Courts-Martial, supra, at paragraph 174d. And, "while custody may of necessity be maintained by physical restraint, it also suffices to utilize no more than moral suasion." *United States v. Ellsey,* supra, at 78.

In the instant case, the accused was accompanied into his home by Sergeant

---

1. The military judge considered the second absence without leave and the escape from custody multiplicious for sentencing.

2. Nevertheless, the preferred procedure is to clearly notify the person to be apprehended that he is thereby taken into custody. Manual, supra, paragraph 19c.

McMickle for the purpose of collecting his personal property, and, while there, McMickle placed himself in a position where he could observe the usual egresses from the house. When the accused went upstairs, McMickle kept track of his presence aurally, if not visually, and immediately rushed upstairs when he no longer could hear the accused.[3]

The factual situation here is substantially the same as in *United States v. Ellsey,* supra. There, the accused had been duly taken into custody by a guard for the purpose of delivering him to the confinement facility. En route, the accused was accompanied to his barracks in order to pack his belongings and, while in the barracks, evaded his guard and disappeared. Based on these facts, the Court found that the accused's offense was breach of lawful custody of his guard.

We are likewise satisfied that the accused's offense in this case constituted an escape from lawful custody of his military escort. We are not persuaded otherwise simply because the accused temporarily was permitted to depart Sergeant McMickle's immediate physical presence. Under the circumstances of this case, we find that at the time of his escape, the accused remained in the "presence" of his escort, and, hence, in lawful custody.

The findings of guilty and the sentence are Affirmed.

LeTARTE, Chief Judge, and ORSER, Judge, concur.

---

3. "Presence" is defined as the "condition of being within sight or *call*." Webster's Third International Dictionary. (Emphasis supplied.)