UNITED STATES, Appellee,

v.

Randy E. FELTY, Private, U. S. Marine Corps, Appellant.

No. 38,475.

NCM 79 1760.

U. S. Court of Military Appeals.

March 22, 1982.

For Appellant: *Lieutenant Commander I. D. Warden, Jr., JAGC, USN* (argued); *Captain James P. Axelrod, USMC.*

For Appellee: *Lieutenant William Eric Minamyer, JAGC, USNR* (argued); *Commander T. C. Watson, Jr., JAGC, USN, Lieutenant Commander Bradley S. Beall, JAGC, USN* (on brief).

Opinion of the Court

EVERETT, Chief Judge.

Appellant was tried by a special court-martial military judge sitting alone, at Marine Corps Air Station, Cherry Point, North Carolina. In accordance with his pleas he was found guilty of three specifications of unauthorized absence and one specification of escape from custody, in violation of Articles 86 and 95, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 895, respectively. Felty was sentenced to a bad-conduct discharge, partial monthly forfeitures for 6 months, and confinement at hard labor for 4 months. The convening and supervisory authorities approved the sentence. Subsequently, the United States Navy Court of Military Review affirmed the findings and sentence, whereupon this Court granted review (9 M.J. 30) of the issue:

WHETHER THE MILITARY JUDGE ERRED IN ACCEPTING APPELLANT'S PLEA OF GUILTY TO ESCAPE FROM THE CUSTODY OF LANCE CORPORAL DAVIS (CHARGE II), IN LIGHT OF APPELLANT'S RESPONSES DURING THE PROVIDENCY INQUIRY INDICATING THAT LANCE CORPORAL DAVIS DID NOT THINK APPELLANT WAS IN HIS CUSTODY AT THE TIME OF THE ALLEGED ESCAPE?

I

Appellant's second unauthorized absence ended on May 20, 1979, when he was picked up by civilian authorities for speeding. Then he was "turned over to the chasers from Selfridge Air National Guard Base in Michigan" who, in turn, delivered him "to chasers from Great Lakes" who brought him to Camp Lejeune. Finally, "Camp Lejeune Chasers brought me here to the Cherry Point Barracks," where he arrived late on the night of May 24.

The next morning Felty was taken from the correctional facility at Cherry Point to a magistrate's hearing on his pretrial confinement. Lance Corporal Davis, who on that day was the "chaser," escorted appellant to the hearing. Appellant was not in handcuffs, but Corporal Davis had "on a duty belt." Moreover, appellant believed that Davis "was supposed to try to stop" him if he had run.

At the hearing, "the magistrate told him pretrial confinement. The Captain told the chaser to take me back to the brig—on the way down the hall in the CG's building, he asked me if he said brig or battalion and I said battalion. And he said that we would stop and eat chow first. We stopped and ate chow and that's when I left."

Because Lance Corporal Davis had not heard the magistrate's instructions, he accepted appellant's misrepresentation that the magistrate had freed him to return to his battalion. Thus, although Felty himself was well aware he had not been released by the magistrate, Davis did not believe appellant was his prisoner. However, Davis decided to "pretend" that appellant was his prisoner when they stopped for lunch at the mess hall. According to Felty:

We went—Right after the Captain told— Right after I told him that the Captain told him to take me to battalion he said that we would stop and eat chow first. And I said all right. We went in and he said I don't know how you are going to get in here with all that long hair—and then he said we will pretend like you're still my prisoner and we'll just go through the line. We went through the line and I sat my tray down at a table

and he went over and sat down with some friends of his—I went over to get a glass of milk and I sat [sic] my glass down and walked out the door.

Felty's departure, which took place about 1210 hours on May 25 led to the third specification of unauthorized absence and to the charge of escape from custody.

## II

"If an accused . . . sets up matter inconsistent with" a plea of guilty, it must be set aside. Article 45, UCMJ, 10 U.S.C. § 845. Appellant now contends that his responses during the providence inquiry reveal that, if he was guilty of any offense, it was escape from confinement, rather than escape from custody.

■■■ Certainly these are different offenses, as *United States v. Ellsey*, 16 U.S.C. M.A. 455, 37 C.M.R. 75 (1966), recognized in reversing a finding of escape from confinement because the evidence showed an escape from custody. "Confinement is" defined by the Code as "the physical restraint of a person." Article 9(a), UCMJ, 10 U.S.C. § 809(a). Although the term "custody" is used in the Code,[1] it is not defined there. However, this gap is filled by paragraph 174*d* of the Manual for Courts-Martial, United States, 1969 (Revised edition), which provides:

Custody is that restraint of free locomotion which is imposed by lawful apprehension. The restraint may be corporeal and forcible or, once there has been a submission to apprehension or a forcible taking into custody, it may consist of control exercised in the presence of the prisoner by official acts or orders.

Moreover, the Manual makes explicit that "[t]here is a clear distinction between the authority to apprehend"—take into custody —"and the authority to . . . confine." Thus, "[a]ny person empowered to apprehend an offender is authorized to secure the custody of an alleged offender until proper authority may be notified, the limitations (21*a* ; Art. 9) notwithstanding." Para. 19*d*, Manual, *supra*. Indeed, often a person suspected of an offense will be apprehended and held in custody until he can be ordered into confinement by a person who, under the Code, may issue such an order. *See* Article 9(b), (c); para. 21, Manual, *supra*.[2] If a suspect who has been apprehended and is being held in custody escapes before he is properly ordered into confinement, he may be charged with escape from custody, but not escape from confinement. *United States v. Ream*, 1 M.J. 759 (A.F.C.M.R. 1975); *United States v. Hicks*, 39 C.M.R. 640 (A.B.R.1968), *pet. denied*, 18 U.S.C.M.A. 620, 39 C.M.R. 293 (1968). After the accused is in "confinement," he no longer is in "custody,"[3] for, as we said in *Ellsey*: "What was intended by custody was the *temporary* form of restraint imposed upon an individual subject to the Code by his lawful apprehension." 16 U.S.C.M.A. at 458, 37 C.M.R. at 78 (emphasis added). *See United States v. Evans*, 3 C.M.R. 783 (A.F. B.R.1952); *United States v. West*, 1 C.M.R. 770 (A.F.B.R.1951).

In the case at bar, Felty was in confinement at Cherry Point prior to the magistrate's hearing. Once confined in a military confinement facility, Felty remained in that status until released from confinement by

1. *See, e.g.*, Article 95, Uniform Code of Military Justice, 10 U.S.C. § 895, which proscribes "escape from custody" and Article 7(a), UCMJ, 10 U.S.C. § 807(a), which states that "[a]pprehension is the taking of a person into custody," and Article 9(e) which concerns "secur[ing] custody of an alleged offender until proper authority may be notified." In 1962 Article 15, UCMJ, 10 U.S.C. § 815, was amended to authorize "correctional custody" as a nonjudicial punishment. *See* 76 Stat. 447.

2. Usually the officer who orders an accused into confinement will not have the authority to

release him from confinement, for "[t]he proper authority to release from confinement in a military confinement facility is the commanding officer to whose command that facility is subject." Para. 22, Manual for Courts-Martial, United States, 1969 (Revised edition).

3. The change in status may be delayed by failure to comply with appropriate directives concerning confinement procedure. *United States v. Bullard*, 40 C.M.R. 621 (A.C.M.R.1969), *pet. denied*, 18 U.S.C.M.A. 642, 40 C.M.R. 327 (1969).

proper authority. Para. 22, Manual, *supra; United States v. Evans, supra.* Indeed, to release a prisoner without proper authority is a violation of Article 96, UCMJ, 10 U.S.C. § 896; *see* paras. 22 and 175, Manual, *supra.*

▮ A prisoner may be released from confinement and delivered into the custody of guards to be transported from one confinement facility to another. In that event, a subsequent escape while being transported should be charged as escape from custody. *United States v. Byrd,* 45 C.M.R. 448 (A.F.C.M.R.1972). However, in the case at bar the military magistrate—who presumably had the authority to order appellant's release from confinement—did not elect to terminate the confinement; instead he ordered that Felty be returned to the stockade. The guard had no authority to release appellant from confinement and, according to appellant's own account, had no intention to change appellant's status. In short, after the magistrate directed the guard to take appellant back to the stockade, he remained in confinement and was not in the "custody" of the guard for purposes of prosecution under Article 95.[4] Thus, he should have been charged with escape from confinement, rather than escape from custody.[5]

▮ Of course, appellant was guilty of the former offense. "An escape may be either with or without force or artifice, and either with or without the consent of the custodian. Any completed casting off of the restraint of confinement, before being set at liberty by proper authority, is an escape from confinement." Para. 174c, Manual, *supra.* The presence of the guard here provided the essential element of physical restraint. As the Air Force Court of Military Review has stated:

> For an accused to be considered under the physical restraint of confinement outside

a confinement facility while under the control of a guard, it must appear that the guard has the means and the duty to use those means to resist or oppose any unauthorized departure by the accused. *It is sufficient if the means consist only of the guard's physical prowess and the degree of effectiveness of those means is immaterial.*

*United States v. Hodge,* 50 C.M.R. 445, 448 (A.F.C.M.R.1975) (emphasis added). *See United States v. Dees,* 45 C.M.R. 891 (N.C. M.R.1972), *pet. denied,* 21 U.S.C.M.A. 634 (1972); *United States v. English,* 17 C.M.R. 693 (A.F.B.R.1954). The record does not indicate that there were instructions or other conditions that would have precluded the guard from utilizing physical force to prevent an escape, as was the case in *United States v. Seelke,* 45 C.M.R. 631 (A.C.M.R. 1972), *pet. denied,* 21 U.S.C.M.A. 648, 45 C.M.R. 929 (1972); and *United States v. Sines,* 34 C.M.R. 716 (N.B.R.1964), *pet. denied,* 14 U.S.C.M.A. 697 (1964). Moreover, the guard's misconception that the magistrate had ordered Felty's release—a misconception induced by appellant's deception and the guard's negligence—did not negate the element of "physical restraint" nor constitute a setting at liberty by proper authority. *Cf.* para. 174c, Manual, *supra.*

### III

▮ If appellant had pleaded not guilty to escape from custody, the finding of guilty could not be sustained on the facts revealed by this record. *United States v. Ellsey, supra.* Does his plea of guilty here permit a different result? Pursuant to Article 45, we have not allowed a plea of guilty to stand when the accused's testimony was at odds with it. We note, however, that escape from custody and escape from confinement are both proscribed by the

---

4. This is the same situation that exists when a guard escorts a prisoner from the stockade to the mess hall, hospital, chapel, or legal office or takes him on a work party. Even though the prisoner is away from the confinement facility, he is under physical restraint and remains in confinement. A different rule would create confusion.

5. In cases where there is doubt whether an accused was in custody or confinement at the time of his escape, alternative specifications may be utilized under Article 95 to cope with exigencies of proof.

same clause of Article 95—an Article which in its entirety consists of one short sentence. The same maximum punishment is authorized for each type of escape. *See* Table of Maximum Punishments, para. 127*c*, Manual, *supra.* The gravamen of each offense is the throwing off of lawful physical restraint—imposed in one instance by apprehension and in the other by properly authorized confinement orders. Felty believed that he was guilty of an escape; according to his answers during the providence inquiry, he *was* indeed guilty. There is no reason to believe that the variance impaired his ability to prepare for trial, and the finding of guilty, if affirmed, would protect him from prosecution on any other charge of escape arising out of the same course of conduct. *Cf. United States v. Hopf*, 1 U.S.C.M.A. 584, 5 C.M.R. 12 (1952).

Looking through the spectacles of Article 59(a), UCMJ, 10 U.S.C. § 859(a), which requires material prejudice to "substantial rights of the accused," we conclude that, under these circumstances, the plea was provident and appellant's answers were not "inconsistent" with his guilty plea within the purview of Article 45. Of course, we are not embracing the approach of *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), which upholds a guilty plea although an accused has not admitted acts of crime and even protests his innocence. However, in cases like this, the technical variance between the offense alleged and that which is established from an accused's own lips does not require setting aside the plea of guilty.

### IV

The decision of the United States Navy Court of Military Review is affirmed.

Judges COOK and FLETCHER concur.