# UNITED STATES

### v.

### William J. BORGES, 568–11–7561, Seaman Recruit (E–1), U.S. Navy

### and

### David A. Tolbert, 224 25 6794, Private (E–1), U.S. Marine Corps.

### NMCM 93 01550, NMCM 93 02221.

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 13 May 1993 (Borges).

Sentence Adjudged 6 July 1993 (Tolbert).

Decided 20 Dec. 1994.

---

LT A.B. Lustre, JAGC, USNR, Appellate Defense Counsel.

LT B.A. Bleier, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

LT Paul J. Ferdenzi, JAGC, USNR, Appellate Defense Counsel.

Before MOLLISON, Senior Judge, and CLARK and DeCICCO, JJ.

MOLLISON, Senior Judge:

The principal issue in these appeals from special court-martial convictions is whether the appellants' pleas of guilty to the offense of escape from custody were providently entered. We conclude that they were and affirm.[1]

### *The Material Facts*

#### 1. Appellant Borges

Seaman Recruit Borges was found guilty of unauthorized absence terminated by apprehension, disrespect toward a superior commissioned officer, escape from custody, and wrongful use of methamphetamine in violation of Articles 86, 89, 95, and 112a, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 886, 889, 895, 912a (1988).

The finding of guilty as to the offense of escape from custody was based on SR Borges' plea of guilty. The military judge's guilty plea examination of SR Borges reflects that on 29 March 1993 SR Borges was apprehended on base by security personnel and placed in handcuffs. He was then placed in the custody of an E–4 master-at-arms and transported to sick call to await a pre-confinement physical. The handcuffs were removed. The events that followed are set forth in the record of trial in a colloquy between SR Borges and the military judge:

> ACCUSED: ... [The master-at-arms] was called to the rear of the office and I just got up and walked out.

MILITARY JUDGE: Okay. So he had you in his custody, but he briefly had to leave the room?

A. Yes, sir.

Q. And when he left the room, you left?

A. Yes, sir.

Q. Did you believe you had authority from anyone to leave the area?

A. No, sir.

Q. Did you believe you had been released from custody by anyone in authority?

A. No, sir.

Q. Did you have any permission or authority to escape?

A. No, sir.

Q. Did anyone force you to escape?

A. No, sir.

Q. Did you believe you had any legal justification for leaving?

A. No, sir.

Q. And you realized that you were still in custody?

A. Yes, sir.

Record at 15. Based on the foregoing, the appellant now asserts that his plea of guilty to the offense of escape from custody was improvidently entered.[2]

#### 2. Appellant Tolbert

Consistent with his pleas, Private Tolbert was found guilty of underage drinking, escape from custody, drunk and reckless driving, and wrongful appropriation of a vehicle in violation of Articles 92, 95, 111, and 121,

---

1. Given the similarity of the issues raised, oral argument on these appeals was consolidated.

2. SR Borges assigns the following errors:

I. APPELLANT'S PLEA TO ADDITIONAL CHARGE IV, ESCAPE FROM CUSTODY, IS IMPROVIDENT WHERE HIS STATEMENT INDICATES THAT THE PERSON WHO APPREHENDED HIM HAD LEFT THE ROOM AT THE TIME APPELLANT WALKED AWAY FROM THE NAVAL SCHOOL OF HEALTH SCIENCES.

II. APPELLANT'S PLEA TO THE AGGRAVATING FACTOR OF APPREHENSION UNDER ADDITIONAL CHARGE I IS IMPROVIDENT WHERE APPELLANT WAS ON HIS WAY TO SURRENDER HIMSELF TO MILITARY AUTHORITIES WHEN HE WAS "APPREHENDED."

III. THE GOVERNMENT FAILED TO PROVE APPELLANT'S GUILT AS TO THE ORIGINAL CHARGE BEYOND A REASONABLE DOUBT.

IV. THE JUDGE ADVOCATE GENERAL OF THE NAVY'S PREPARATION OF THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW JUDGES' FITNESS REPORTS VIOLATES APPELLANT'S RIGHT TO AN IMPARTIAL JUDICIAL FORUM. [CITATION OMITTED.]

Assignments of Error II through IV are without merit and do not require further comment. Manual for Courts–Martial, United States, 1984, Part IV, ¶ 10c(10); UCMJ art. 66(c), 10 U.S.C. § 866(c); *United States v. Mitchell*, 39 M.J. 131 (C.M.A.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

UCMJ, 10 U.S.C. §§ 892, 895, 911, 921 (1988).

The guilty plea examination of Pvt Tolbert reflects that on 29 April 1992 Pvt Tolbert got drunk, wrongfully appropriated his roommate's pickup truck, and drove it in a reckless manner. He was pulled over by an E–4 military policeman. Following a field sobriety test, Pvt Tolbert was transported to the base Provost Marshal's Office [PMO]. There, he was administered a breathalyzer. Following the breathalyzer, Pvt Tolbert explains, "[T]hey took me to another room.... I believe they was getting some paperwork done I had to sign. And when [the apprehending MP] left the room, I climbed out the window and went back to my barracks, sir." Record at 15. The record of trial further reflects the following colloquy between the military judge and Pvt Tolbert:

MILITARY JUDGE: What makes you think that you weren't authorized to climb out the window and go back to your barracks?

ACCUSED: Because nobody had given me proper authority to leave, sir.

Q. Were you in fact placed in the custody of [the MP]?

A. Yes, I was, sir.

Q. Did he tell you that you were not to leave the area?

A. Yes, sir.

Q. Do you believe [the MP] was a person authorized to place you in custody?

A. Yes, sir.

Q. Had anyone at all given you any permission to release yourself from custody?

A. No, sir.

Q. Was there anything that forced you to escape from custody?

A. No, sir.

Q. Do you believe you had any legal justification or excuse for doing so?

A. No, sir.

Q. Were you still in the custody of [the MP] when you climbed out the window?

3. Pvt Tolbert assigns as the sole error:
APPELLANT'S PLEA TO ESCAPE FROM CUSTODY WAS NOT PROVIDENT BECAUSE THE APPELLANT WAS NO LONGER IN THE

A. Yes, sir.

Record at 16. Based on the foregoing, Pvt Tolbert now also asserts that his plea of guilty to the offense of escape from custody was improvidently entered.[3]

■ A military Court of Criminal Appeals will not set aside a finding of guilty based on a guilty plea unless the record contains some matter in substantial conflict with the guilty plea. *United States v. Vega*, 39 M.J. 79 (C.M.A.1994); *United States v. Prater*, 32 M.J. 433 (C.M.A.1991); *United States v. Newsome*, 35 M.J. 749 (N.M.C.M.R.1992), *aff'd*, 38 M.J. 464 (C.M.A.1993); UCMJ art. 59(a), 10 U.S.C. § 859(a) (1988). The essence of the assignment of error in both appeals is, then, that such a conflict exists, that is, the appellant could not have been guilty of escape from custody because he was not in the immediate presence of his custodian and thus was not "in custody" at the time he absconded.

### The Law

The Manual for Courts–Martial explains: "Custody" is restraint of free locomotion imposed by lawful apprehension. The restraint may be physical or, once there has been a submission to apprehension or a forcible taking into custody, it may consist of control exercised in the presence of the prisoner by official acts or orders. Custody is temporary restraint intended to continue until other restraint (arrest, restriction, confinement) is imposed or the person is released.

\* \* \* \* \* \*

An escape may be either with or without force or artifice, and either with or without the consent of the custodian. However, where a prisoner is released by one with apparent authority to do so, the prisoner may not be convicted of escape.... Any completed casting off of the restraint ..., before release by proper authority, is an escape, and lack of effectiveness of the restraint imposed is immaterial.

PRESENCE OF HIS CUSTODIAN WHEN HE EXITED THE PROVOST MARSHAL'S OFFICE.

Manual for Courts–Martial [MCM], United States, 1984, Part IV, ¶ 19c(3)(a), (3)(c), (4)(c).

In *United States v. Ellsey,* 16 U.S.C.M.A. 455, 37 C.M.R. 75, 1966 WL 4610 (1966), the accused was being escorted by a guard from the adjutant's office to the brig. En route the accused was taken to his barracks to pack his gear. There, the accused evaded his guard and disappeared. The accused was charged with escape from confinement. The Court of Military Appeals observed:

[C]ustody and confinement are entirely different in nature. The first results from apprehension and lasts until proper authority may be notified. It may be imposed by any person empowered by departmental regulations. Confinement, on the other hand, absent authorization by a commanding officer, may be ordered only by a commissioned officer. Its execution before and after trial is subjected to strict control. Finally, *while custody may of necessity be maintained by physical restraint, it also suffices to utilize no more than moral suasion.* Hence, far from being identical to confinement, it is an altogether different condition.

*Id.,* 16 U.S.C.M.A. at 458, 37 C.M.R. at 78 (emphasis added) (citation and quotation omitted). The Court then held that the proof established an escape from custody, not an escape from confinement, and that the variance was fatal.

In *United States v. King,* 45 C.M.R. 783 (N.C.M.R.1971), the accused reported to his first sergeant's office in the barracks following his sentence to confinement by a special court-martial. The first sergeant instructed the accused to go out to the adjacent squad bay and pack his gear while the first sergeant confirmed the sentence with the legal office. After the first sergeant confirmed the sentence, he exited his office to find the accused had departed. The accused was later apprehended riding in a taxi cab. The accused was found guilty of escape from the first sergeant's custody. On appeal, this court concluded the accused was no longer in custody when he was ordered to go pack his gear which necessitated his departure from the first sergeant's presence.

In *United States v. Ream,* 1 M.J. 759 (A.F.C.M.R.1975), the accused was being escorted by Air Force personnel back to his unit following his apprehension by civilian authorities. The accused was driven to his home to collect his personal belongings. The accused entered his home in the company of an Air Force sergeant. The accused went upstairs to obtain his property; the sergeant waited downstairs where he could observe the usual points of egress from the house. When the accused's voice could no longer be heard, the sergeant went upstairs and discovered the accused had fled. The accused pled guilty to escape from custody, but challenged the providence of his plea on appeal because he had been permitted to depart the sergeant's immediate physical presence. The Air Force Court held that under the circumstances the accused remained in the escort's "presence" and that the plea was provident. In a footnote the court also took note that the dictionary meaning of "presence" is the " 'condition of being within sight or *call.*' " 1 M.J. at 761 n. 3.

In *United States v. Royal,* 2 M.J. 591 (N.C.M.R.1976), the accused and other Marines were escorted by chasers to a hospital for pre-confinement physical examinations. At the examination room the accused and another detainee received permission to visit the head. Two chasers were posted outside the door to the head. After a time, one of the chasers decided to enter the head to see what was taking so long. At first the door was blocked, but after it was forced open, the accused fled through the hospital. The accused was convicted of escape from custody. On appeal he claimed custody was not proven. This court held that under the circumstances of the case, the accused remained in the "presence" of his escort and his lawful custody. The court also took note of the "sight-or-call" definition of "presence" in *Ream.*

In *United States v. Felty,* 12 M.J. 438 (C.M.A.1982), the accused had been placed in pretrial confinement. Later, he was escorted to a probable-cause hearing at a location outside of the brig. The hearing officer continued the accused's pretrial confinement. The accused's escort did not hear or under-

stand the ruling of the hearing officer; therefore, he asked the accused what the decision was. The accused knowingly misinformed the escort that the accused was to be returned to his battalion, vice the brig. The escort decided that he and the accused would first stop at the mess hall for lunch, but owing to the accused's long hair, would pretend that the accused was still his prisoner. While at the mess hall, the accused was allowed to walk away. At his subsequent court-martial the accused pled guilty to escape from his escort's custody. On appeal he challenged the providence of his plea. The Court of Military Appeals agreed that "confinement" and "custody" are mutually exclusive conditions under military law and that escapes should be charged according to the appropriate status. However, it also concluded that the presence of the guard provided the essential element of physical restraint for the offense of escape from confinement; that an escape can be by force or artifice and with or without the consent of the custodian; that there was no evidence of conditions precluding the use of force by the escort; that the escort's misconception did not negate "physical restraint" or constitute a setting at liberty by proper authority; that the gravamen of the two escape offenses was the throwing off of lawful physical restraint; and, that the variance between the two was not prejudicial. Accordingly, it affirmed the appellant's conviction of the offense of escape from custody, even though in fact he had escaped from confinement.

In *United States v. Mobley*, 12 M.J. 1029 (A.C.M.R., *aff'd*, 14 M.J. 134 (C.M.A.1982), the Army Court noted that the existence of custody is a question of fact in each case.[4] It also identified another dictionary meaning of the term "presence," namely "the space within one's 'ken, call or influence.'" 12 M.J. at 1031.

Finally, in *United States v. Clements*, 40 M.J. 713 (N.M.C.M.R.1994), the accused was transported to an emergency room at a naval hospital for a pre-confinement physical examination. The accused's handcuffs were removed and he was instructed to lie on a gurney. When the escort left the room, the accused got up and walked out of the hospital. The accused pled guilty to escape from custody, and on appeal asserted his guilty plea was improvidently entered. This court agreed the accused's guilty plea lacked the requisite factual basis, citing the "sight-or-call" definition of "presence," noted in *Ream* and *Royal*, and the absence of anything in the record respecting the whereabouts of the escort at the time the accused left.

### Discussion

■ From the foregoing, a number of relevant principles respecting the offense of escape from custody emerge. First, the accused must have been taken into custody, that is, his free locomotion must have been restrained by lawful apprehension. Next, the restraint must be maintained by physical means or by control exercised in the presence of the prisoner by official acts or orders. Custody continues until the accused is released by proper authority.

■ The accused commits the offense of escape from custody when the accused completely casts off the restraint before being released by proper authority. The effectiveness of the restraint is immaterial. In fact, in the final analysis all escapes are as a result of the ineffectiveness of the restraint, physical or otherwise.

■ When restraint is being maintained by means other than physical, the issue is whether it is being maintained by control exercised in the presence of the detainee, recognizing again that the control need not be effective. In these cases appellate courts have focussed on whether the control was being exercised in the detainee's "presence." For these purposes illustrative definitions of "presence" have been employed, such as "the condition of being within sight or call" and "the space within one's ken, call or influence."

On the one end of the spectrum are decisions indicating the detainee was effectively

---

4. The *Mobley* court's conclusion that immediate pursuit is immaterial to this offense is at odds with other decisions of this court. See *United States v. White*, 39 M.J. 796, 803 (N.M.C.M.R. 1994); *United States v. Vichos*, 13 C.M.R. 562, 1953 WL 2510 (N.B.R.1953).

released because he had been abandoned. *Clements.* On the other end are cases in which the detainee is in the immediate physical presence of the custodian when he takes flight. *Mobley.* In between, are cases in which restraint is maintained despite the custodian's being out of the immediate physical presence of the detainee. In other words, "presence" is only constructive. *Ream; Royal.* In these cases appellate courts have looked to various factors, e.g., whether the detainee was in the sight or call of the custodian, and if not, what other physical barriers or circumstances indicate the detainee remained under the control of the custodian. Posting at a door through which the detainee would normally have to exit or posting at a vantage point from which the custodian could monitor the normal points of egress are examples.

█ While a common thread to these cases is difficult to find, the thread seems to be that when the detainee reasonably knows that he remains subject to the custodian's influence or control, he is in custody. When the detainee frees himself from that influence or control, the offense of escape from custody has been committed. In all events, whether the detainee is under restraint by virtue of control exercised in the presence of the detainee is a question of fact.

## *Application*

### 1. Appellant Borges

█ SR Borges was taken into custody. He was never released by proper authority. For a time custody was maintained by physical means—handcuffs. Eventually the handcuffs were removed. SR Borges knew he was bound for confinement and was at sick call getting a pre-confinement physical for that purpose. It is true he provided two somewhat different renditions of the facts surrounding the escape. In his own narrative he says his custodian went to the back of the office and he took advantage of this distraction to flee. In response to leading questions by the military judge, SR Borges agreed the custodian left the room briefly. As between these two versions of the facts, we are more inclined to accept the one volunteered by SR Borges than the one suggested by the military judge. In either event, it

appears the custodian had not abandoned SR Borges, and SR Borges knew he was still in custody and not free to go. In short, until SR Borges fled, he remained under the influence and control of his custodian. When he fled, he escaped from custody. Accordingly, we find the matters he stated in the guilty plea examination were not substantially in conflict with his plea of guilty. We will not now reject that plea. *Vega; Prater; Newsome.*

### 2. Appellant Tolbert

█ Pvt Tolbert submitted to apprehension. He was never released by proper authority. He was transported to the military police station and there placed in a room to await the processing of paperwork. Pvt Tolbert knew he was in custody and was not free to leave. In fact, he acknowledged he had been told not to leave. Given his selection of such an unorthodox means of egress, Pvt Tolbert apparently himself did not believe either he or the PMO had been suddenly abandoned. We likewise will not assume that they had been abandoned. The physical restraints upon him were both structural (the police station and room) and human (the presence of the apprehending officer within the building). In this setting he was clearly subject to the influence and control of his custodian. As in all cases resulting in a consummated escape, the measures imposing the restraint were ineffective, but they were clearly in place and the appellant knew it. The fact that Pvt Tolbert was obliged to resort to an artifice, escape through a window, confirms he was subject to his custodian's influence and control at the time. The matters stated by Pvt Tolbert at trial, far from being inconsistent with his plea of guilty, confirmed its accuracy. In short, when Pvt Tolbert bailed out of the window of this police station, he was escaping from his apprehending officer's custody. Accordingly, his plea to this offense will also not now be rejected. *Vega; Prater; Newsome.*

### *Disposition*

Accordingly, as to each appellant, the findings of guilty and sentence as approved on review below are affirmed.

Judge CLARK concurs.

DeCICCO, Judge (concurring in part and dissenting in part):

I agree in affirming Private Tolbert's conviction for escape from custody, but I respectfully dissent in the case of Seaman Recruit Borges.

While *United States v. Ellsey*, 16 U.S.C.M.A. 455, 37 C.M.R. 75, 1966 WL 4610 (1966) states, as quoted in the majority opinion, that moral suasion suffices to maintain custody, it does *not* hold that moral suasion continues even in the absence of the custodian after that custodian has abandoned the person in custody. In *Ellsey*, the accused evaded his custodian. In both of the cases before us, the custodians walked away from the accuseds.

The Government takes the position that moral suasion continues to exist even in the complete absence of the custodian, and that if an accused who has been abandoned by his custodian simply walks away, then he has escaped from custody. However, adoption of this view would blur the clear distinction between custody and the truly moral restraint of restriction. The former involves a restraint on movement that is either physical in nature (e.g., a locked room, handcuffs or shackles) or a moral control in the presence of the accused by official acts or orders. The latter is a moral restraint to certain limits without the continuous presence of a custodian. I read moral suasion, as that term is used in the cases, as a moral control, not amounting to physical restraint, that is exercised *in the presence* of the accused by official acts or orders.

Both appellants pleaded guilty to escaping from custody in violation of Article 95, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 895. Article 45, UCMJ, 10 U.S.C. § 845, requires a guilty plea to be set aside if the accused sets up a matter inconsistent with the plea. In *United States v. Newsome*, 35 M.J. 749, 751 (N.M.C.M.R.1992), *aff'd*, 38 M.J. 464 (C.M.A.1993), this Court stated:

Inconsistencies and apparent defenses must be resolved or the guilty pleas must be rejected by the military judge. *United States v. Jemmings*, 1 M.J. 414 (C.M.A. 1976); *United States v. Jackson*, 23 M.J. 650 (N.M.C.M.R.1986), *pet. denied*, 24 M.J. 405 (C.M.A.1987). The military judge is

not required "to embark on a mindless fishing expedition to ferret out or negate all possible defenses or inconsistencies." *Jackson*, 23 M.J. at 652. Rather, the military judge is required to deal with potential issues raised in the providence inquiry or during the trial that indicate an inconsistency or a defense. *Id.* When the accused's responses reasonably raise the question of a defense, the military judge must make a more searching inquiry. *United States v. [Timmins] Timmons*, 21 C.M.A. 475, 45 C.M.R. 249 [1972 WL 14168] (1972).

In the case of Private Tolbert, he related to the military judge that his custodian left him in an office in the Provost Marshal's Office to take care of some paperwork. The custodian told him not to leave the area. Once left alone, Private Tolbert left the room via a window. Although the custodian was not immediately in front of Tolbert, I agree with the majority that the custodian was "in his presence" because the custodian was nearby attending to paperwork. Also, this took place in a police station, where multiple persons with custodial authority are normally present. In the absence of any indication that this police station was deserted, I find no inconsistencies in the military judge's inquiry with Tolbert's guilty plea and no substantial basis to reject the plea.

However, there is an inconsistency in the responses provided by Seaman Recruit Borges to the military judge during the inquiry into the providence of his plea. As set forth above, the accused at first told the military judge that his custodian went to the rear of the office when the accused walked out. But then the military judge asked him if the custodian had to briefly *"leave the room."* (emphasis added). Appellant answered affirmatively. The military judge then asked again "And when he *left the room*, you left?" (emphasis added). And again the accused said "Yes, sir." I cannot reconcile these responses in determining the actual location of the custodian. Was he in the room, or had he left the room? The record does not include information regarding whether Borges was ordered to remain, but his handcuffs had been removed.

At no point in this trial did the military judge define the term "custody" to the appellant. Had he read the definition contained in the Manual for Courts–Martial, United States, 1984, including the portion regarding control exercised in the presence of the prisoner, I cannot conclude with sufficient certainty that Borges would have replied to the military judge's questions with the same facile legal conclusions. Such legal conclusions that he was still in custody, without having being given the definition therefor, are insufficient to establish a factual basis for a guilty plea. *United States v. Terry,* 21 U.S.C.M.A. 442, 45 C.M.R. 216, 1972 WL 14158 (1972).

The military judge left this record with an inconsistency that should have been resolved. *Newsome.* In my opinion, this inconsistency does matter, for if the custodian had abandoned Borges in the medical office, his guilty plea to escape from custody was improvident. *United States v. Clements,* 40 M.J. 713 (N.M.C.M.R.1994). If the custodian had in fact left the room and abandoned Borges for some unknown location, any moral suasion that existed upon Borges may have terminated. Based on this record, I cannot disregard the questions of the military judge simply because they were leading questions. They were valid questions, they are a part of this record, and they were answered unequivocally by the accused.

Accordingly, I would find Borges' guilty plea to escape from custody improvident. I would set aside the guilty findings to this charge and specification and reassess the sentence. I concur with the majority's disposition of the other issues Borges has raised.