**UNITED STATES, Appellee,**

v.

**Private E2 Brannon K. McDANIEL,
United States Army, Appellant.**

**ARMY 9801068.**

U.S. Army Court of Criminal Appeals.

24 Nov. 1999.

For Appellant: Colonel John T. Phelps II, JA; Colonel Adele H. Odegard, JA; Major Kirsten V.C. Brunson, JA; Captain Jodi E. Terwilliger–Stacey, JA (on brief).

For Appellee: Lieutenant Colonel Eugene R. Milhizer, JA; Major Patricia A. Ham, JA; Captain Kelly D. Haywood, JA (on brief).

Before CAIRNS, Senior Judge, BROWN, and VOWELL, Appellate Military Judges.

OPINION OF THE COURT

VOWELL, Judge:

A military judge sitting as a special court-martial convicted the appellant, pursuant to his pleas, of willful disobedience of a commissioned officer (two specifications), escape from confinement, wrongful appropriation of a motor vehicle, sodomy, and adultery, in violation of Articles 90, 95, 121, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 895, 921, 925, and 934 [hereinafter UCMJ]. The military judge sentenced the appellant to forfeiture of $617.00 pay per month for five months, confinement for 150 days, and a bad-conduct discharge. The convening authority approved the sentence adjudged and ordered forty-two days of pretrial confinement credit.

■ The case is before the court for automatic review pursuant to Article 66, UCMJ. In a single assignment of error,[1] the appellant alleges his guilty plea to escaping confinement was improvident, as he had not yet entered into a confinement facility at the time of his escape. We hold that once a soldier is lawfully ordered into confinement, unless released by proper authority, that soldier may be convicted of escape from confinement, regardless of the nature of the facility in which the soldier is held. We therefore affirm the appellant's conviction.

Facts

The appellant became acquainted with Mrs. S, the wife of a fellow soldier, at a civilian club near Fort Campbell, Kentucky.

---

1. Pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), the appellant requests us to consider the clemency matters submitted to the convening authority. Upon consideration, we have determined that those matters do not warrant any relief.

Although Mrs. S told him she was married, she and the appellant nonetheless engaged in consensual sexual intercourse and oral sodomy on several occasions in the spring of 1998. When Specialist S learned of his wife's affair with the appellant, he sought the assistance of the appellant's commander, Captain (CPT) Womack, in terminating the relationship.

Captain Womack obliged, preferring the sodomy and adultery charges of which the appellant now stands convicted, and ordering the appellant not to leave Fort Campbell. The appellant twice violated this order, once on 24 May 1998, and again on 31 May 1998. On the last occasion, the appellant wrongfully appropriated the truck of another soldier to facilitate his departure. The appellant does not challenge his guilty pleas to these offenses.

As a result of the appellant's wrongful appropriation of the truck, CPT Womack preferred additional charges and, on 2 June 1998, a military magistrate reviewed the appellant's pretrial confinement and ordered it to be continued. The military detention cell at Fort Campbell, Kentucky, was full. Therefore, until he could be transferred to the Regional Confinement Facility at Fort Knox, Kentucky, on 3 June 1998, the appellant was held under guard and in leg irons in his unit's training room. At approximately 0400 hours on 3 June 1998, the appellant slipped off his leg restraints and escaped from the training room through the window. He was apprehended later that day at the Nashville, Tennessee, airport.

## Discussion

■ Citing Dep't of Army, Pam. 27–9, Military Judges' Benchbook, para. 3–19–4d (30

Sept. 1996), and *United States v. Ellsey*, 16 U.S.C.M.A. 455, 37 C.M.R. 75, 1966 WL 4610 (1966), the appellant argues that actual placement in a confinement facility is a prerequisite to an escape from confinement conviction under Article 95, UCMJ.[2] As the providence inquiry and stipulation of fact disclosed, the appellant had not yet physically entered the Regional Confinement Facility prior to his unauthorized exit from the training room. Thus, he contends, as there is no factual and legal predicate for his plea, we must set aside his conviction of this specification. *See United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969). The government, citing *United States v. Felty*, 12 M.J. 438 (C.M.A.1982), urges us to find the appellant's plea to escape from confinement provident, or in the alternative, to affirm a finding of guilty of escape from custody.

Given the multitude of cases[3] attempting to distinguish between escape from confinement and escape from custody, and the extreme difficulty of extracting coherent legal and factual guideposts therefrom,[4] adopting the government's suggested alternative disposition is tempting. Nevertheless, our statutory responsibility is to approve findings of guilty that are correct in law and fact, and if the appellant's plea of guilty is supported by the underlying facts, we should sustain it. *See* UCMJ art. 66(c); *United States v. Russell*, 50 M.J. 99, 100 (1999); *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991).

Early decisions of the service Boards of Review and the then Court of Military Appeals established that escape from custody was not a lesser included offense of escape from confinement.[5] If the facts as adduced

---

2. Article 95, UCMJ, provides in pertinent part: "Any person subject to this chapter ... who escapes from custody or confinement shall be punished as a court-martial may direct."

3. For those historically inclined, many of the often-conflicting opinions interpreting the escape offenses of Article 95, UCMJ, are cited in Judge James' dissenting opinion in *United States v. Felix*, 36 M.J. 903, 913 (A.F.C.M.R.1993) (en banc). Arguing his brethren were ignoring precedent in order to affirm a conviction for escape from correctional custody, in violation of Article 134, Judge James outlined the holdings of over forty earlier decisions interpreting escape offenses under military law. The then Court of Military

Appeals nonetheless affirmed the majority opinion of the lower court. *United States v. Felix*, 40 M.J. 356 (C.M.A.1994).

4. *See, e.g., United States v. Maslanich*, 13 M.J. 611, 613–14 n. 1 (A.F.C.M.R.1982) ("the reported cases do not align logically into any sensible and consistent pattern") and *United States v. Borges*, 41 M.J. 739, 745 (N.M.Ct.Crim.App.1994) ("a common thread to these cases is difficult to find").

5. In an often-cited opinion, the Air Force Board of Review explained that "custody ... contemplates a temporary status created to satisfy a

at trial for one charged with escape from confinement proved that the accused was in custody rather than confinement, the variance was fatal to the conviction. *See Ellsey,* 37 C.M.R. at 79.

In *Felty,* the Court of Military Appeals blurred the distinction between confinement and custody. Private Felty was held in pretrial confinement after his apprehension for absence without leave (AWOL). An escort took him from the confinement facility for a magistrate's hearing. The magistrate continued his confinement, communicating that decision to Private Felty, but apparently not to his escort. Private Felty told his escort that the magistrate had released him. During a stop for lunch, he went AWOL again. *Felty,* 12 M.J. at 438–39.

At trial, Private Felty pled guilty to escape from custody. Under *Ellsey,* the variance between the facts—which clearly established that Private Felty had been confined and had not been properly released—and the charged offense would have been fatal. Finding only a "technical variance," the court concluded his guilty plea was provident. In dicta, the court noted that Private Felty could not have been convicted of the charged offense, however, had he pled not guilty. *Felty,* 12 M.J. at 441.

This history of escape offenses under Article 95, UCMJ, is not merely an academic exercise. In modifying *Ellsey's* conclusion that charging the wrong offense was always fatal, *Felty* simply tells us we can sustain the appellant's guilty plea to an Article 95, UCMJ, violation. It does not resolve the issue of the appellant's status at the time of his escape, leaving open the question of which escape offense can be affirmed.

A perusal of the decisions of the Army and Air Force courts since *Felty* discloses a shift in focus in viewing the distinction between confinement and custody, with more recent decisions turning on the status of the individual at the time of the escape. *See, e.g.,*

*United States v. Jones,* 36 M.J. 1154 (A.C.M.R.1993); *Felix,* 36 M.J. at 903; and *United States v. Cornell,* 19 M.J. 735 (A.F.C.M.R 1984).

The *Manual for Courts–Martial* provides ample support for making the accused's status at the time of the escape—in custody or in confinement—determinative of the offense to be charged. *Manual for Courts–Martial, United States,* (1995 ed.), Part IV, para. 19c(3)(a) [hereinafter MCM],[6] defines custody as "restraint of free locomotion imposed by lawful apprehension. . . . Custody is temporary restraint intended to continue until other restraint (arrest, restriction, confinement) is imposed or the person is released." Confinement is defined in paragraph 19c(4)(a) as "physical restraint imposed under Rule for Courts–Martial 305; 1101; or paragraph 5b, Part V." We note that there is no requirement that a prisoner must be placed in a confinement facility before his status changes from "in custody" to "in confinement." Rather, the plain language of the MCM suggests that, once ordered into confinement by a person with the authority to do so, an individual is lawfully confined within the meaning of Article 95, UCMJ, until released by proper authority.

The gravamen of an Article 95, UCMJ, violation is the casting off a lawfully imposed restraint. *See Felty,* 12 M.J. at 441; *United States v. Hamilton,* 41 C.M.R. 724, 1970 WL 7385 (A.C.M.R.1970). To be sure, paragraph 19c(4)(a) of the MCM requires that the accused be under "physical restraint" at the time of the escape. *Compare* MCM, Part IV, para. 19c(4)(a) *with* para. 19c(2)(c) (defining arrest as a moral restraint). It does not, however, require any particular form of physical restraint.

The requirement to demonstrate actual physical restraint to establish an escape from confinement has been modified over the years. Where once the focus was on the physical nature of the restraint—recognizing

---

particular need for authority by those performing law-enforcement functions." *United States v. West,* 1 C.M.R. 770, 773 (A.F.B.R.1951). Confinement, the Board noted, "is not a continuation of custody but a new and different form of restraint." Finding that Private West had been placed in confinement and had escaped while on a work detail at a warehouse outside the base

prison, the board concluded his conviction for escape from custody could not be affirmed, as he was in confinement, not custody, at the time of his escape. *West,* 1 C.M.R. at 773.

**6.** All citations are to the 1995, MCM, which was in effect at the time of the appellant's offenses.

that the presence of a guard was a form of physical restraint—the status of the escapee at the time of his departure is now a more relevant factor. The literal application of the physical restraint test sometimes led to arguably absurd results. *See, e.g., U.S. v. Hamilton,* 41 C.M.R. 724 (conviction overturned because guard's instructions precluded using physical restraint on escaping prisoners); *United States v. Silk,* 37 C.M.R. 523, 1966 WL 4631 (A.B.R.1966) (conviction overturned when prisoner on work detail walked away while stockade guard was checking prisoners in an adjacent room); *United States v. Owens,* 6 C.M.R 515 (A.F.B.R.1952) (conviction overturned because record did not demonstrate the presence of guards while accused was on work detail outside confinement facility). The Air Force court was the first to consider the physical restraint requirement as inherently met by the status of being a "confined" prisoner. *See, e.g., Cornell,* 19 M.J. at 735 (conviction upheld when post-trial confinee escaped while on unguarded visit to gymnasium) and *United States v. Maslanich,* 13 M.J. 611 (A.F.C.M.R.1982) (conviction upheld when pretrial confinee escaped while at defense counsel's office and guard departed). In *Jones,* 36 M.J. at 1156, this court adopted the rationale of *Cornell* and *Maslanich,* holding that, once ordered into confinement, temporary release under guard, even one unarmed or physically incapable of subduing a prisoner, did not alter the prisoner's status as a confinee.

When the appellant's escape is analyzed in terms of the legal nature of the restraint cast off, his contention that he was not "in confinement" at the time of his escape fails. While it is true that some cases suggest that a prisoner must be committed to a confinement facility before an escape may occur,[7] we find other decisions that affirm an escape from confinement when the escapee exited something other than an official confinement facility more persuasive. In *United States v. Hangsleben,* 22 C.M.R. 503, 1956 WL 4818 (A.B.R.1956), our predecessor Board of Review sustained a conviction of escape from

confinement when the accused, awaiting transport to a regional confinement facility for service of his adjudged sentence, escaped from an unauthorized battalion "guardhouse." The facility was apparently misnamed, as no guards were present, facilitating the accused's departure. In affirming, the Court of Military Appeals noted that "an accused is guilty of escape when he breaks out of confinement which is imposed properly, although the place of confinement may not be one of those specifically authorized by superior authorities." *U.S. v. Hangsleben,* 24 C.M.R. 130, 134 (1957). *See also Jones,* 36 M.J. at 1154 (pretrial confinee held overnight in detention cell pending transfer to confinement facility escaped during administrative processing the following day—court held that accused remained in a confinement status); *United States v. Hodge,* 50 C.M.R. 445, 1975 WL 15647 (A.F.C.M.R.1975) (conviction of attempted escape from confinement upheld when accused attempted to escape while en route to ordered confinement). We note that Article 95, UCMJ, does not proscribe escape from a confinement facility; it proscribes escape from confinement.

The appellant was lawfully ordered into confinement and had not been properly released from that status. We hold that an escape by one lawfully confined is an escape from confinement; the nature of the facility in which the prisoner is held is not material. Restrained by leg irons and guarded, albeit incompetently, the appellant cast off this physical restraint, and exited the room in which he was held. His escape was from confinement, not merely custody, and his plea to escape from confinement was therefore provident.[8]

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge CAIRNS and Judge BROWN concur.

7. *See, e.g., United States v. Bullard,* 40 C.M.R. 621, 624, 1969 WL 6158 (A.B.R.1969).

8. Although not determinative on this issue, we note the appellant requested and received 42 days sentence credit, over government objection, for time spent in pretrial confinement, which included the period 2–3 June 1998, when he was held in the unit training room.