UNITED STATES

v.

**Joshua A. LILLYBLAD, Private (E–1), U.S. Marine Corps.**

NMCM 200100235.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 30 July 1999.

Decided 30 Nov. 2001.

LT I.L. Paredes, JAGC, USNR, Appellate Defense Counsel.

LT Jason A. Lien, JAGC, USNR, Appellate Government Counsel.

Before LEO, Chief Judge, ANDERSON and FINNIE, Appellate Military Judges.

FINNIE, Judge:

In accordance with his pleas, the appellant was convicted before a military judge sitting as a special court-martial of unauthorized absence and suffering a prisoner to escape through neglect, in violation of Articles 86 and 96, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 896. The appellant was sentenced to confinement for 3 months, forfeiture of $600 pay per month for 3 months, and a bad-conduct discharge. The convening authority approved the sentence as adjudged. Pursuant to a pretrial agreement, the convening authority suspended all confinement in excess of 75 days for a period of 12 months from the date of the sentence.

After carefully considering the record of trial, the appellant's sole assignment of error, and the Government's response, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

The appellant contends that the evidence is legally and factually insufficient to support the finding of guilty for the specification under Charge II of suffering a prisoner to escape through neglect. In support of his assigned error, the appellant asserts that his plea was improvident, because Corporal (Cpl) M was not a "prisoner" within the meaning of Article 96, UCMJ. MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 20c(1)(a). The appellant contends that Cpl M was in the appellant's charge only as a result of an apprehension. Thus, the appellant argues his conviction is not supported, because Cpl M was not confined pursuant to RULE FOR COURTS-MARTIAL 305, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). Appellant's Brief of 10 Apr 2001 at 3–5. We disagree.

### Providence Inquiry

During the providence inquiry, in response to the military judge's questions, the appellant stated that Cpl M was under confinement at the Thai Marine barracks at Camp Samaesan. Cpl M had been apprehended for unauthorized absence by the shore patrol. The appellant understood that Cpl M had been verbally told not to go anywhere. He further described to the military judge that Cpl M was confined in one of the barracks rooms. The doors of this room were wired shut and the appellant had been assigned to sit outside one of the doors to guard it. Master Sergeant (MSgt) Toleafoa had assigned the appellant to guard Cpl M. MSgt Toleafoa later directed that the appellant escort Cpl M to get a haircut. In the course of escorting him to the barbershop, the appellant allowed Cpl M to escape. Record at 26–33.

The military judge explained the elements of the offense to ensure that a factual basis existed for accepting the appellant's plea. The military judge explained confinement as follows:

"Confinement" is the physical restraint of a person within a confinement facility or under guard or escort after having been placed in a confinement facility. The status of the confinement, once created, continues until the confined individual is released by proper authority.

Record at 21. He further added:

The term "prisoner" refers to a person who is physically restrained because of confinement or custody.[1]

Record at 21. In explaining the elements of the offense, the military judge used the terms confinement and custody interchangeably. After evidence had been presented on sentencing, the military judge briefly reopened the providence inquiry. The pertinent part of the colloquy between the appellant and the military judge was as follows:

MJ: Private Lillyblad, I believe you told me earlier that [Cpl M] was orally—either orally or in writing, informed that he was in custody; is that right?

ACC: Yes, sir.

MJ: How do you know that?

---

1. We note that this reference by the military judge appears to arise from his use of the model trial guide provided by the Chief Judge of the Navy–Marine Corps Trial Judiciary. It also appears in MCM, Part IV, ¶ 74c(1).

ACC: Well, why else would he be under confinement, sir?

MJ: Have you read the reports or investigations concerning the case?

ACC: Yes, sir.

MJ: Do those reports or investigations state that he was in custody for being in a period of unauthorized absence.

ACC: Yes, sir.

Record at 51–52.

## Sufficiency of the Guilty Plea

■ Acceptance of a plea by the military judge requires a sufficient factual basis for determining whether the acts of the accused constitute the offense to which he is pleading guilty. *United States v. Care,* 18 C.M.A. 535, 541, 40 C.M.R. 247, 253, 1969 WL 6059 (1969). The military judge may accept the plea if the factual circumstances revealed by the accused objectively support the plea. The standard of review on this issue is whether the record reveals a substantial basis in law and fact for questioning the plea. *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991). A plea of guilty must be rejected if an accused sets up matter inconsistent with the plea. Art. 45, UCMJ, 10 U.S.C. § 845. Notwithstanding, our superior Court has held that Courts of Criminal Appeals are not required to engage in post-trial speculation regarding matters inconsistent with an appellant's plea. *United States v. Grimm,* 51 M.J. 254, 257 (1999). The rejection of a guilty plea must overcome the generally applied waiver of the factual issue of guilt inherent in a voluntary plea of guilty. The only exception to the general rule of waiver arises when an error prejudicial to the substantial rights of the appellant occurs. R.C.M. 910(j); Art. 59(a), UCMJ.

The appellant relies on paragraph 20c(1)(a) of the Manual for the proposition that an individual must be confined pursuant to R.C.M. 305 to constitute a violation of Article 96, UMCJ, for suffering a prisoner to escape. Although the language in the Manual seeks to define the meaning and ambit of a specific punitive article, it is not conclusively authoritative, but subject to judicial interpretation. *United States v. Mance,* 26 M.J. 244, 252 (C.M.A.1988). However, in *United States v.*

*Davis,* 47 M.J. 484, 486 (1998), our superior Court indicated that this Court should adhere to the President's unambiguous narrow construction when favorable to an accused and not inconsistent with the Code. Notwithstanding, we reject the appellant's intellectual construct as faulty.

■ We reach this conclusion for three reasons. First, we interpret paragraph 20c(1)(a) in harmony with Article 96, UCMJ. *See* 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.06 (6th ed.2000)(statute should be construed to give effect to all its provisions so no part will be inoperative or superfluous). Article 96, UCMJ, provides:

> Any person subject to this chapter who, without proper authority, releases any prisoner committed to his charge, or who through neglect or design suffers any such prisoner to escape, shall be punished as a court-martial may direct, **whether or not the prisoner was committed in strict compliance with law.**

(emphasis added.). The explanatory provision of paragraph 20c(1)(a) states, " '[p]risoner' includes a civilian or military person who has been confined." This phrase must be taken in the proper context. Under the Code, "[c]onfinement is the physical restraint of a person." Art. 9(a), UMCJ. The procedure for pretrial confinement is prescribed in R.C.M. 305. It is the nonbinding "Discussion" section of R.C.M. 305(d) that distinguishes "custody" from "confinement." This distinction, however, is grounded in the procedural requirements for pretrial confinement. "[A] person who has been apprehended could be physically restrained, but this would not be pretrial confinement in the sense of this rule until a person authorized to do so under R.C.M. 304(b) directed confinement." R.C.M. 305(d), Discussion. Clearly, the plain language of Article 96, UCMJ, refutes the position that a failure to comply with the Manual prerequisites for pretrial confinement constitutes a defense to suffering a prisoner to escape. To resolve the narrow issue before us, we hold that there is no legally significant difference between custody and confinement, as both involve the

physical restraint of a person sufficient to confer status as a prisoner for the purposes of Article 96, UCMJ. *See United States v. Trimble*, 2 C.M.R. 718, 722, 1951 WL 2294 (A.F.B.R.1951)(noting that for an escape within the meaning of Art. 96, UCMJ, the prisoner must have overcome a physical restraint). Against the statutory background, we interpret "prisoner" in paragraph 20c(1)(a) as a term of art that denotes an individual in either confinement or custody. Our interpretation maintains agreement between this explanation in the Manual and the statute. The contrary interpretation asserted by the appellant, which requires that the prisoner must be in a pretrial confinement status pursuant to R.C.M. 305, would effectively nullify that part of the Article 96, UCMJ, that a defect in confinement does not create a defense. In the absence of a clearly manifested intention to restrict the operation of the Code, we construe this Manual provision in a manner consistent with the Codal language.

Second, it appears clear from the history of paragraph 20c(1)(a) that this provision was not intended to negate part of Article 96, UCMJ. The current provision is taken substantially from paragraph 175 of the MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1969 (Revised ed.). This previous provision stated, "The words 'any prisoner' include a civilian or military prisoner." Additionally, paragraph 175 of the Manual provided, "[a]n officer may receive in his charge a prisoner not committed in strict compliance with the terms of Article 11(a) or other law, and a prisoner having been so received has been 'committed' in the sense of Article 96." This additional language was not included in the revision. However, as it simply restates the statute, it would have been surplusage. The matter of import is that the predecessor language to paragraph 20c(1)(a) did not recognize a defense based on a procedural defect in the commitment of a prisoner. Obviously cognizant of the clear effect of the statute previously replicated in the Manual, it is implausible that the Manual

drafters contemplating paragraph 20c(1)(a) would have had the President enact an inconsistent provision without an express statement to that effect.

Third, assuming *arguendo* there was an ambiguity between Article 96, UCMJ, and paragraph 20c(1)(a) of the Manual regarding the procedural requirements for establishing the status of prisoner, the question is settled beyond peradventure by examining subsequent provisions of the Manual in *pari materia. See* 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION §§ 51.01–51.03 (6th ed.2000)(related statutes should be construed together). Another provision of the Manual states that a, " 'prisoner' is a person who is in confinement or custody imposed under R.C.M. 302, 304, or 305, or under sentence of a court-martial who has not been set free by proper authority." MCM, Part IV, ¶ 74c(1). Prisoner is used in a generic sense encompassing the status of being apprehended, arrested, or confined. As a consequence, the Manual offers further support to our interpretation of paragraph 20c(1)(a) that an individual in either confinement or custody satisfies the definition of a prisoner for a violation under Article 96, UCMJ.

█ We also reject the appellant's challenge to the factual sufficiency of his plea. The appellant was convinced of, and able to describe all the facts necessary to establish each element of the offense. We are satisfied that there are sufficient facts in the record that Cpl M was a prisoner. The manner of his confinement followed longstanding military practice.[2] Cpl M was advised of his restraint and placed in a barracks room under the control of a sentry, the appellant. Although these were field-expedient measures, the circumstances leave no doubt that the appellant was placed on sufficient notice as to the status of his prisoner. While the appellant points to facts from which he might logically argue that Cpl M was in custody and not properly confined, he did not raise this issue at trial. The appellant conceded the factual issue at trial when

---

**2.** "As to the *mode* in which the confinement is to be executed the *private soldier,* when placed in arrest, is generally confined in the guard-house or other appropriate place of restraint, a sentinel being usually posted either without or within." WINTHROP'S MILITARY LAW AND PRECEDENTS 124 (2d ed.1920 reprint).

he unconditionally pled guilty, and, thus relieved the Government of its burden to introduce all its available proof on this question. Without further evidence, the appellant asks this Court to speculate that procedural requirements were not properly complied with in order for Cpl M to be in a prisoner status. We decline the invitation to speculate post-trial as to the existence of facts which might invalidate this appellant's guilty plea. *United States v. Johnson,* 42 M.J. 443, 445 (1995).

The pretrial agreement does not contain a *Lamb* clause, and the record of trial does not contain a deferment request. *See United States v. Lamb,* 22 M.J. 518, 518–19 (N.M.C.M.R.1986). Without such a clause or a deferment request, the appellant's confinement had run in entirety at the time of the convening authority's action. As a result, the convening authority "erroneously attempted [in his action] to partially suspend confinement that had already run." *Lamb,* 22 M.J. at 519. We will take corrective action in our decretal paragraph to "eliminate any risk of prejudice." *Id.*

Accordingly, we affirm the findings and only so much of the sentence as provides for confinement for 75 days, forfeiture of $600 pay per month for 3 months, and a bad-conduct discharge.

Chief Judge LEO concurs.

ANDERSON, Senior Judge (concurring in part and dissenting in part):

I concur in the result reached by the majority in this case. During the providence inquiry, the appellant admitted that the Marine he allowed to escape through neglect was a prisoner confined under guard in a Thai Marine barracks room that had been wired shut. The escape occurred when the appellant escorted the Marine to a barber

shop to get a haircut and failed to properly supervise him. That admission suffices to sustain a guilty plea to violating Article 96, Uniform Code of Military Justice, 10 U.S.C. § 896. *See United States v. McDaniel,* 52 M.J. 618, 621 (Army Ct.Crim.App. 1999)("[O]nce ordered into confinement, temporary release under guard, even one unarmed or physically incapable of subduing a prisoner, did not alter the prisoner's status as a confinee.").

Although the appellant invites us to question whether the escorted Marine was actually a confinee at the time of the escape, we should not "speculate post-trial as to the existence of facts which might invalidate an appellant's guilty pleas," *United States v. Johnson,* 42 M.J. 443, 445 (1995), and we should not "allow [the] appellant to throw a penalty flag and prevail after he has admitted on the record to each element of the charged offense[ ] which remain[s] uncontradicted to date." *United States v. Russell,* 50 M.J. 99, 100 (1999). Furthermore, a plea of guilty waives any objection relating to the factual issue of guilt. RULE FOR COURTS-MARTIAL 910(j), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.).

I respectfully disagree with the view of the majority that the meaning of the word "prisoner" as used in Article 96, UCMJ, includes not only an individual who is confined but one who is merely being held in custody.[1] The word "prisoner" for the purposes of Article 96, UCMJ, is unambiguously defined as a "person who has been *confined.*" MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 20c(1)(a)(emphasis added). In addition, a person is not " 'committed' in the sense of Article 96" until the prisoner "has been *confined.*" MCM, Part IV, ¶ 20c(1)(d)(emphasis added).[2]

---

1. Because the appellant's admissions support his guilty pleas, the majority's venture into defining the term "prisoner" serves to offer an advisory opinion. A federal court should never issue an advisory opinion on an abstract proposition of law. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975); *Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969).

2. Similarly, section 1997e(h) of Title 42, U.S.Code, defines the term "prisoner" to mean "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

Confinement requires the physical restraint of a person by order of competent authority; custody, on the other hand, is merely a temporary restraint, generally imposed by apprehension, that is intended to continue until greater restraint is imposed or the person is released.[3] In my opinion, without prefatory confinement ordered by competent authority, custody is simply inadequate to invoke "prisoner" status under Article 96, UCMJ. Art. 96, UCMJ; MCM, Part IV, ¶ 20c(1)(a). The following scenario illustrates the difference between the majority's view and mine.

Lance Corporal (LCpl) A is apprehended outside of the barracks by Captain (Capt) B for unauthorized absence and is in his custody. Captain B then orders Sergeant (Sgt) C to escort LCpl A to the barber shop while he goes to see the Commanding Officer to obtain a confinement order. In the process of escorting LCpl A to the barber shop, Sgt C becomes distracted and negligently allows LCpl A to escape. Under the majority view, Sgt C could be convicted of violating Article 96, UCMJ, because LCpl A had been placed in custody prior to his escape. In my view, however, Sgt C, although derelict in the performance of his duties under Article 92, UCMJ, 10 U.S.C. § 892, could not be convicted of violating Article 96, UCMJ, because LCpl A had not been ordered into confinement by a person authorized to do so prior to his being escorted to the barber shop.

Finally, I disagree with the majority's view that the clause in Article 96, UCMJ, which states "whether or not the prisoner was committed in strict compliance with law," refers to whether or not the prisoner was confined in compliance with the law. In my opinion, that clause refers to whether or not the prisoner was entrusted to the appellant's charge in compliance with the law, not whether the prisoner was confined in compliance with the law.

3. Confinement is defined under the Uniform Code of Military Justice as the physical restraint of a person. Art. 9(a), UCMJ, 10 U.S.C. § 89(a). For the purposes of Article 95, UCMJ, 10 U.S.C. § 895 (Resistance, flight, breach of arrest, and escape), confinement is further defined as the physical restraint of a person imposed by the order of competent authority under R.C.M. 305 (pretrial confinement), R.C.M. 1101 (post-trial confinement), or MCM, Part V, ¶ 5b (nonjudicial punishment). MCM, Part IV, ¶ 19c(5). Custody is defined as the restraint of free locomotion imposed by lawful apprehension; it is temporary restraint intended to continue until other restraint (arrest, restriction, confinement) is imposed or the person is released. MCM, Part IV, ¶ 19c(4). These definitions should be equally applicable to Article 96, UCMJ. *See* 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION §§ 51.01–51.03 (6th ed.2000)(stating that related statutes should be construed together). Although the majority attempts to relate a much broader definition of the word prisoner used under Article 134, UCMJ, 10 U.S.C. § 934, to Article 96, UCMJ, those two statutes are clearly not in any way related. *Compare* Art. 134, UCMJ, *with* Art. 96, UCMJ.