UNITED STATES, Appellee

v.

Tye L. EDWARDS, Private
U.S. Army, Appellant

No. 10-0481

Crim. App. No. 20090257

United States Court of Appeals for the Armed Forces

Argued December 14, 2010

Decided February 9, 2011

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, STUCKY, and RYAN, JJ., joined.

Counsel

For Appellant:  Captain Kristin McGrory (argued); Colonel Mark
Tellitocci, Lieutenant Colonel Imogene M. Jamison, Lieutenant
Colonel Jonathan Potter, Major Peter Kageleiry, and Captain
Brent A. Goodwin (on brief); Major Timothy W. Thomas and Captain
Todd Lindquist.

For Appellee:  Captain Nathan S. Mammen (argued); Colonel
Michael E. Mulligan, Major Christopher B. Burgess, and Captain
Stephen E. Latino (on brief).

Military Judge:  Patrick J. Parrish


**This opinion is subject to revision before final publication.**

United States v. Edwards, No. 10-0481/AR

Judge ERDMANN delivered the opinion of the court.

Private Tye L. Edwards entered guilty pleas to a number of offenses including escape from confinement in violation of Article 95, Uniform Code of Military Justice (UCMJ).[1]  A military judge sitting as a general court-martial found him guilty of all charges and sentenced him to eighteen months confinement and a bad-conduct discharge.  In accord with the pretrial agreement, the convening authority approved four months of the confinement and the punitive discharge.  The United States Army Court of Criminal Appeals (CCA) summarily affirmed the findings and the sentence.  United States v. Edwards, No. ARMY 20090257 (A. Ct. Crim. App. Apr. 30, 2010).

Whether an accused is guilty of escape from custody or escape from confinement logically depends upon the accused's status at the time of the escape.  Article 95, UCMJ, 10 U.S.C. § 895 (2006).  We granted review in this case to determine whether the military judge erred in accepting Edwards' guilty plea to

---

[1] In addition to the offense of escape from confinement, Edwards entered guilty pleas to the following offenses:  failure to go his appointed place of duty; absence without leave (AWOL); willfully disobeying an officer; assaulting an officer; willfully disobeying a noncommissioned officer; assaulting a noncommissioned officer; wrongful use of marijuana; and unlawful entry, in violation of Articles 86, 90, 91, 112a, and 134, UCMJ.

2

escape from confinement.[2]  We hold that Edwards was in custody rather than confinement at the time of his escape and his guilty plea to escape from confinement was therefore not provident.

## Background

As a result of a series of misconduct incidents, Edwards was brought to meet with his company commander.  His commander ordered him to surrender his military identification card to restrict his freedom of movement.  Edwards refused and his commander instructed the company first sergeant to call the military police.  Edwards then attempted to leave the company headquarters and after grabbing his commander and scuffling with three senior noncommissioned officers, he was eventually subdued.  His company commander ordered him into pretrial confinement and he was placed in hand and leg irons.

Prior to being taken to the confinement facility and prior to his pretrial confinement hearing, Edwards was taken to see a trial defense attorney.  Once at the defense attorney's office, Edwards' shackles were removed while he met with his attorney.

---

[2] We granted review of the following issue:

> Whether there is a substantial basis in law and fact to question Appellant's plea to escape from confinement given that at the time of the alleged offense he was neither within a confinement facility nor under guard or escort after having been placed in a confinement facility.

United States v. Edwards, 69 M.J. 243 (C.A.A.F. 2010) (order granting review).

United States v. Edwards, No. 10-0481/AR

After his defense attorney dismissed him to return to the adjacent waiting area, Edwards left the building without authorization. It was this "escape" that resulted in the charge of "escape from confinement" which Edwards now challenges.[3]

Following the entry of Edwards' guilty pleas, the military judge conducted the providence inquiry. In reference to the offense of escape from confinement the military judge properly informed Edwards of the elements of the offense and then defined "confinement," in part, as "the physical restraint of a person within a confinement facility or under guard or escort after having been placed in a confinement facility." During the providence inquiry Edwards admitted that his company commander had ordered him into confinement and that she was authorized to do so. He further admitted that when he left the trial defense attorney's office he had not been released from confinement.[4]

## Discussion

This court "review[s] a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo." United States v.

---

[3] Edwards remained AWOL until he was arrested for traffic violations over two weeks later.

[4] The military judge did not question Edwards to ensure his understanding of the terms "confinement" and "confinement status" during the providence inquiry, nor did he note the conflict between his definition of "confinement" and Edwards' explanation of his "escape" prior to being taken to a confinement facility.

Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008). "In doing so, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." Id.

Article 95, UCMJ, provides that "[a]ny person subject to this chapter who . . . escapes from custody or confinement; shall be punished as a court-martial may direct." While the UCMJ does not define custody, it does reference the term in Article 7, UCMJ, which provides that "[a]pprehension is the taking of a person into custody." The Manual for Courts-Martial (MCM), however, defines "custody" to be the:

> restraint of free locomotion imposed by lawful apprehension. The restraint may be physical or, once there has been a submission to apprehension or a forcible taking into custody, it may consist of control exercised in the presence of the prisoner by official acts or orders. Custody is temporary restraint intended to continue until other restraint (arrest, restriction, confinement) is imposed or the person is released.

MCM pt. IV, para. 19.c(4)(a) (2008 ed).

"Confinement" is defined by Article 9, UCMJ, as "the physical restraint of a person" and is further defined by the MCM to be physical restraint imposed under, inter alia, Rule for Courts-Martial (R.C.M.) 305 (pretrial confinement). MCM pt. IV, para. 19.c(5)(a). Moreover, R.C.M. 304(d) states that confinement is imposed by an order of competent authority "by

the delivery of a person to a place of confinement." The UCMJ and the MCM establish a continuum from custody to other forms of restraint, i.e., arrest, restriction, and confinement. On several occasions over the years, this court has dealt with the question as to where an accused was located on this continuum when he escaped.

In United States v. Ellsey, 37 C.M.R. 75, 78 (C.M.A. 1966), this court determined that custody and confinement are entirely different in nature. In Ellsey an accused who had been ordered into confinement was taken into custody for delivery to the confinement facility, but escaped before "delivery could be effected and confinement actually imposed upon him." Id. at 79. Under those circumstances the court held that the proper offense to charge was escape from custody rather than escape from confinement. Id. In United States v. Felty, 12 M.J. 438 (C.M.A. 1982), overruled on other grounds by United States v. Morton, 69 M.J. 12 (C.A.A.F. 2010), Felty had been placed in a correctional facility but later was taken out and escorted by a "chaser" to attend his pretrial confinement hearing before a magistrate. Following the hearing Felty misrepresented the magistrate's decision to the chaser and informed the chaser that the magistrate had released him. When the two stopped for chow, Felty walked out the door. Id. at 439-40. He was subsequently charged with unauthorized absence and escape from custody. Id.

at 440.  The court noted that once Felty had been confined in the military confinement facility, he remained in a confinement status until released by a proper authority.  Id. at 440-41. Under those circumstances the court held that Felty should have been charged with escape from confinement rather than escape from custody.  Id. at 441.

Before this court Edwards argues that since he was neither "within a confinement facility" nor "under guard or escort after having been placed in a confinement facility," he was not in a confinement status at the time of his escape.  He asserts that his conviction for escape from confinement must be set aside pursuant to this court's decision in Ellsey.

The Government relies on the Army Court of Criminal Appeals decision in United States v. McDaniel, 52 M.J. 618 (A. Ct. Crim. App. 1999), and argues that once Edwards was lawfully ordered into confinement by his company commander and physical restraint imposed, he was in a confinement status for purposes of Article 95, UCMJ.  In McDaniel, the Army court held that this court's decision in Felty, "blurred the distinction between confinement and custody."  Id. at 620.  The Army court found no specific requirement in the MCM that a prisoner must be placed in a confinement facility in order to be in a "confinement" status. Id.  Notwithstanding Ellsey, the Army court held that placement

in a confinement facility is unnecessary for the offense of escape from confinement under Article 95, UCMJ. Id. at 621.

The issue as to whether "confinement" is effected by an order to confinement and the imposition of some restraint as urged by the Government, or by the actual imposition of confinement, was settled by Ellsey and we see no need to alter that holding. Ellsey held that confinement must be actually imposed to initiate confinement status, a holding that was not altered by Felty. Felty simply recognized that once an accused is placed in a confinement status, he is in that status until released by an authorized person. If an accused escapes while in a confinement status, even if he or she is being escorted outside of a confinement facility, he has escaped from confinement. Felty, 12 M.J. at 441-42. Ellsey remains good law and McDaniel, to the extent it is inconsistent with Ellsey, was wrongly decided. Edwards had not been placed in a confinement facility prior to his escape and his status remained that of "custody" rather than "confinement."[5] Therefore his plea to escape from confinement was not provident.

## Conclusion

The United States Army Court of Criminal Appeals decision affirming Charge VI and its specification is reversed and Charge

---

[5] We reserve for another day the issue, raised in McDaniel but not in this case, as to what constitutes a confinement facility for purposes of Article 95, UCMJ.

VI and its specification are dismissed.  The remaining findings of guilt and the sentence are affirmed.